$6,059.00 United States v. Starling And again, we'll wait for the lawyers to show up. Okay, Mr Johnson. Good morning, Your Honors. This case involves an important issue with a straightforward answer that has nonetheless caused significant confusion in the lower courts. Specifically, the issue here is what standard to apply for lifting a entry of default in a civil forfeiture case. And the reason this issue is important is because many civil forfeiture cases, in fact most civil forfeiture cases, involve small amounts of money. And as a result, claimants are often pro se, and these cases often end in default judgments. And the answer here is simple. The simple answer is that the standard here is the same as in any other civil case. When a party appears before the entry of default judgment in order to contest the action, the case is assessed under a lenient good cause standard under Rule 55. On the other hand, if somebody appears after the judgment has been entered, at that point, the case is assessed under a still lenient but less lenient excusable neglect standard under Rule 60. And then if somebody appears a year after the judgment has been entered under Rule 60C1, at that point, ordinarily, the judgment is conclusively final and even excusable neglect won't suffice to lift the judgment. So essentially what we have is a sort of series of steps where the judgment becomes more final over time. And applying – and just, again, the – She doesn't actually move for vacater of the default, right? But you're saying because she appeared before the default judgment was entered and she's pro se, then she clearly wants there not to be a default judgment entered. The district court should have construed her filings as a motion to vacate the default. Is that right? I think that's right, Your Honor. I think that her pro se status is certainly relevant. I also think there are cases from this court and other courts that indicate that the precise way that the motions are filed doesn't alter the standard. Why wouldn't the letter just as easily and maybe more convincingly be read as a motion to lift the entry of default? She says, I'd like to move forward with court proceedings to have all of the funds returned to me properly. I think that's right. I think, you know, if I had been the district court judge, I probably would have construed this as a motion to lift the default. But, again, I think either – whether it's construed that way or whether it's construed as a claim as the district court did, you know, ultimately the district judge – you know, there's cases, for instance, in Meehan v. Snow from this court. You know, there was – the government filed for declaratory – for a default judgment. There was an opposition filed. And what the court said is, you know, if you're opposing the entry of default judgment, which Crystal certainly was doing here, we assess that under the Rule 55. The judgment hadn't been entered yet. Exactly. It hadn't been entered. Exactly. In Meehan. Exactly. Yes. So, you know, whether it's – whether it comes before the court in the posture of somebody opposing the entry of the default judgment or in the posture of somebody moving to lift the entry of default, you know, this court in Meehan, in other cases, the Sixth Circuit in 2250, these courts all say, you know – because these issues can rise in different postures, but ultimately the substantive question is, do you lift the default and allow the case to go forward? So even if it's the good cause standard, what is her good cause? Sure. So, Your Honor, under the good cause standard, there are three factors. The first factor is the willfulness of the default. And this court has said that, you know, willfulness means that you have to really be trying to hold up the action. You know, even gross negligence doesn't bar a finding of willfulness. And the case for that is American Allied Insurance versus Eagle Insurance. You know, so there's no contention here that Crystal was willful in her default. And actually the government concedes the opposite. At page 50 of their brief, they say that she acted in good faith. So that's the first factor. The second factor is the prejudice. Was she negligent? You sent a notice to her house by Federal Express, right, and she didn't respond? I don't think she was negligent, Your Honor. I think taking into account her pro se status, I don't think she was negligent. I think she acted to the best of her ability. You know, should she have responded within the time? I mean, obviously that's what the rule says. But I don't think that I would concede that she was negligent. But, again, even negligence doesn't bar a finding of good cause under this court's cases. The question is whether she was separately operating under the understanding that she couldn't pursue the money until there was an acquittal. Right, I think this is a confusing situation for a lay person, Your Honor, where there's a case going on in the state criminal courts. You know, her property, she had both her car was seized and her money. You know, she had actually been able to recover her cars through going to the state prosecutor's office. Her car was being processed through the state system. So this is about whether she got advice from the district attorney, right? How do we navigate that? Did she get that advice? It does appear that she did, Your Honor, yes. I mean, she says that she did, that there's an affidavit from the state prosecutor that that's not the case. But then, you know, and the state prosecutor says, well, I never talked to her at all. But that's clearly not true because there's a property return receipt that was signed. But another state prosecutor said, I don't remember. Yes, but then there's actually a receipt in the record showing that they clearly did talk because the property return receipt for the return of her car was signed by that state prosecutor. But ultimately, Your Honor, I don't think this matters because the standard here, under the good cause Rule 55 standard, is willfulness. And again, there's just no— So it wouldn't be good cause only if we knew that she got the notice and purposefully decided not to respond in time because she wanted to delay the proceedings. Yeah, and that, for instance, is the facts of New York v. Green that the government cites in their brief. And in that case, the court found that there was a willful default because the party was trying to draw out the proceedings by not responding in a timely fashion. That's the kind of willfulness that this court is looking for. You know, in American Allot Insurance, there was essentially just a law office failure where they weren't reading their mail. And this is a law office, lawyers, and the court said that was gross negligence. And that actually was a Rule 60 case. So under a higher standard, where the defaulting party had to meet a higher standard, and yet the court said even their gross negligence didn't bar a finding of excusable neglect. And again, it was Rule 60, so it was excusable neglect. And the reason is because the other two factors, the presence of a merits defense and whether there's prejudice to the opposing party, were sufficiently strong to overcome even gross negligence. And here the government doesn't even try to argue that Crystal wouldn't have at least a colorable merits defense. And the government has never even tried to establish prejudice. I don't think there's any possible argument that there's prejudice here. You know, if Crystal had appeared and contested the merits, this case almost certainly would have been stayed pending the resolution of the state court action regardless, which is exactly when the state court action ended that Crystal first sends her letter to try to sort of ask what's going on with this money. So, you know, there's no prejudice, there's a meritorious defense, and there's no willfulness. All factors weigh in favor of lifting the default. Thank you. Thank you very much, Mr. Johnson. You reserve time for rebuttal, but we'll turn to the appellee, Mr. Rocker. That's as high as it goes, I guess. Good morning, Your Honors, and may it please the court. Michael Rocker from the Department of Justice on behalf of the United States. Your Honors, I listened to my friend's presentation this morning, and the fundamental problem that we have with that is that as this court has emphasized time and again in civil forfeiture cases, a claimant's statutory standing is a critical threshold issue. Without standing, a claimant is simply an outsider with no ability to influence or affect the course of the judicial proceedings. The question of whether or not the court should have vacated the default or construed her pleadings as a request to vacate the entry default. It's a preliminary question. How did this $8,000 end up in the hands of the United States? I thought there was a state proceeding in Rochester. The Rochester police found the money. Yes. And now you're arguing for all of these issues of federal procedure. How did it end up in your hands, and why? Yes, Your Honors, in the government's brief, there's a reference to the fact that this is what's called an adoptive forfeiture proceeding. Whatever it is, why? I can't speak to that. The record doesn't say. It's just that this is a common practice that occurs where local governments seize the funds and they ask for federal enforcement. They don't know what to do with it, so they give it to the feds? I honestly don't know the answer to that question, but I know that adoptive- Or maybe they do it because the federal government, for reasons that you were arguing, has a better grip on this kind of forfeiture, so you don't have to return it. I don't think it's about the outcome so much, Your Honors. It's not that we're trying to prevent returning it. I just know that- No, you're working hard at it. Well, we're defending the district court's judgment, and we're applying the rules equitably and across the board to everyone. I'm just wondering what you're doing here. I mean, why is this in the hands of the federal government? Again, Your Honor, there are procedures and regulations in place that allow local authorities to ask for the assistance of- And they call you up and they say, we've got $8,000, and we'd like you to hold it. Is that what happens? And you say, well, I'm happy. We're like a bank here. Well, respectfully, I don't think that- What do you say there are more onerous standards for returning money that is taken from innocent people? And so why don't you leave the money with us, and then we'll give you 80% of it? Your Honors, I don't think there's anything in the record to suggest that the government was motivated by- The federal government- This is a cooperative partnership, and these happen- The federal government gets 20%. The state government or the- Actually, you have the Rochester Police Department. They get 80%. Okay. Well, that's an incentive, isn't it? It may be an incentive, but I don't think that's improper. It's an adoptive forfeiture proceeding that's established by regulation, and it happens all over the country all the time because local jurisdictions don't have the manpower or the ability, so they sometimes transfer the funds. There's an interim transfer of the funds- They don't have the manpower to hold on to money? Not to hold on to it, but to commence forfeiture proceedings. I'm not in any way an expert on New York State forfeiture law and how the forfeiture proceedings work. I don't know which is more difficult or onerous, but there's certainly no suggestion that the adoptive forfeiture here was undertaken in any sort of bad faith. But the state government can't even figure out how to do forfeiture proceedings. Doesn't it make sense that the pro se litigants would have trouble navigating the system in order to file a claim to get the money back? I don't think so, Your Honor, because the notice specifies what's required. The notice uses clear, easily understood language, and again, there's nothing in this record to indicate that- You just told me that the state governments don't have the capacity- No, I- For this proceeding, but it's so obvious to any litigant who's acting pro se about what the deadlines are and what they should be filed. Well, two separate questions. I said I don't know what the state's capacity is, but I said one of the reasons they may do these adoptive admissions is from a resource standpoint. I'm not saying that it's cumbersome or more difficult on the state level as compared to the federal level. What I'm saying is that adoptive forfeiture proceedings are common. As far as the- Can I say something when you first began about lack of statutory standing? And what was that point? Yes, Your Honor. So the threshold question for any time a third party claimant wants to be heard on the merits, they have to demonstrate what this court has termed statutory standing. To demonstrate their standing, they have to simply check a few boxes and do a few things, one of which is to file a timely claim and an answer. And the point that I was trying to make is that until they have established their standing, they can't contest merits-based rulings like the entry of a default, and that's why that's a secondary issue. The threshold question- Well, so she comes in before the entry of a default judgment, right? She files letters- After the notice of default and before the judgment, yes. Before the judgment. The district court construes it as an untimely claim. Correct. The district court construes it as a claim. She obviously wants relief from the default, so why shouldn't the district court have understood it, because it's a pro se litigant, as both a claim and a motion to vacate the default? Even assuming that it had, it's not going to reach the question of vacating default until it first determines whether she has standing, and that was the basis for the court's decision. That's the threshold question. That's the court's phraseology. Standing is the threshold question. So the first issue, and it turned out the only issue- She obviously has standing in the case of injury, redressability, and causation, right? So what do you mean by that? You mean whether she's a valid claimant? There's two- This court has said- Do you dispute that she is? She has Article III standing, yes. But statutory standing is different. Under the civil forfeiture rules- We say statutory standing, but it means cause of action, right? Not exactly, no. It means in order to demonstrate statutory standing, a claimant has to file a timely claim and an answer. Right? That's what gives rise to their ability to then intervene and become, instead of an outsider, a third party, they become an insider who has rights in the litigation. The problem is when a claimant files- Oh, I see. So what you're saying is that before entertaining- Yes. A possible motion to vacate default- Yes. He first has to consider whether there's a claim and the lateness of the claim should be- Yes. That's what I'm- Yes, that's my point. That's the threshold question. And so that's the issue the district court looked at. Right? We don't get to the vacator of the default until we first determine she met the threshold. Because her claim was conceitedly out of time by more than three months, the district court- But I mean, whenever somebody comes in and seeks relief from a default, that means that they've come in in an untimely fashion. So why wouldn't the good cause standard still apply? There's always going to be somebody who untimely made some filing. Well, you could argue in that situation why wouldn't the excusable neglect standard be the one that always applies? Because that relates to the threshold question, if you understand my point. There also could be situations- Right, but obviously that's not what the law says. We do allow people to seek relief from a default. We don't say, well, you don't have standing to pursue that because first I have to see if you're a valid party. Right? Correct. Yes. That's correct. But there could also be cases, for example- And so you could say, well, before I decide whether you're a valid party to be part of these proceedings, you've asked to be relieved from the entry of the default. And so I'm going to consider that and then turn to the other- I mean, I think that inverts the merits with the threshold question. But even if you do that, the analyses are separate. We're not disputing- The merits of what? Relief from a default is- Is good cause. That's a good cause standard. But to establish- That's not the merits of the case, right? No, I- Because the law favors resulting cases on the merits, courts should readily grant relief from- Sure. I'm using the word merits loosely. Let me try to be more precise. The good cause standard for vacating an entry of default is a different analysis. We're agreeing that under Rule 55C, that is, good cause is the correct standard. What we're saying is there's a separate inquiry that has to be determined at the threshold as to whether or not she filed a timely claim. And where her claim was three months out of time, the district court, as it pointed out, even construing her pleadings liberally and making the best arguments that it could- But you're saying that there's jurisdiction in the sense that she actually has Article III standing, right? Yes. So you're not talking about the lack of jurisdiction. No. So why is it that these things have to be sequenced this way? Because- Why shouldn't it be that if there's been an entry of a default and we have a strong policy that favors resolutions on the merits, you give relief from the default and then evaluate the timeliness of the claim? Well, my only response would be to say that this Court's cases have said that statutory standing in civil forfeiture cases is the threshold question. It may not bear on jurisdiction, but it bears on the claimant's status as either an outsider or an insider. Until you determine that the claimant is an insider, it's not appropriate for the Court to then reach the merits of any legal- Is the question here as to whether she was an insider? Yes, that's precisely the point. Because she didn't demonstrate excusable neglect for filing three months out of time, the Court said she lacked statutory standing and, therefore, the- Yes, just in reality, though, she's not an outsider to the- Perhaps my jargon is imprecise. What I'm trying to say, insider versus outsider, means someone who has standing and who can, therefore, contest rulings on the merits versus someone who does not have standing and, therefore, cannot contest the merits of any judicial rulings in the civil forfeiture case. And because the district court said that Starling did not have standing because there was no excusable neglect for her untimely filing- You keep saying the standing, but, you know, you're saying the lateness of the claim should trump relief from a default. It comes first. It's a sequencing issue. Yes. Because, again, the Court's words, not mine, that statutory standing is a threshold question. If threshold means anything, it means that sequencing, that has to come first. And I don't understand, you know, there's a lot of disagreement between the parties. You know, we certainly acknowledge that if you're looking at the 55C vacator, it is good cause. But I know there's been a lot of discussion in the briefs. I mean, the excusable neglect standard for determining the timeliness of her claim, I think that follows inexorably from the Supreme Court's decision in Pioneer. And this Court has applied the Pioneer factors and the Pioneer test to determine whether or not there's excusable neglect. It did so in In Re American Express in 2011. And so the district court was on very solid footing in saying, in deciding this threshold question, that there was no excusable neglect. So I guess I have a couple questions. So if the good cause standard applies, do you agree that she has good cause? Good cause to vacate or good- To vacate. What I would say is this, Your Honor. The district court didn't address those factors. I think the appropriate course would be to remand. In suggesting that, I'm not saying that we would necessarily oppose a finding of good cause, but I'm not prepared to concede the point right now. So you take no position on whether she had good cause? Because you don't address it, so I'm just curious what you think. Did she have good cause? I didn't address it because it wasn't the issue that was teed up below, and it wasn't before the district court. So I'm asking you now. Yes. I think there's probably good cause, but I don't want to concede the point because there may be an argument that we could establish. And I just, I'm not prepared. Do you think there's not excusable neglect? Why? Because it's not good enough that she didn't understand the process? Well, I don't think it's, I mean, first of- The district court says that she had within her control whether she could have consulted a lawyer, right? And therefore, it's not excusable because she could have consulted a lawyer, right? Well, the district- It wouldn't give parties the right to proceed pro se. Sure. In fact, when you're pro se, you're supposed to liberally construe the proceedings that the court's supposed to help them. Right. Not use it as a factor against the party. And I think the district court did liberally construe her pleadings. It said very clearly, I'm going to construe them liberally. I'm going to give her the benefit and present the strongest argument that they could be gleaned from her letters. So there's no question the district court took her pro se status into account. On this comment about whether the district court used it against her, I think with respect that it's being a little bit taken out of context. And so if I could just take a second to try to put some meat on the bones here. With regard to these discussions with the state prosecutors, Starling was basically saying two things. First of all, they told me that the money wouldn't be available until Bronson's trial was resolved. Okay. That's temporal advice. They're just saying when you can get the funds. It's also good advice, isn't it? If the money were held by the state, that would be good advice, correct? It's legal. I'm sorry. What would be legal? What the prosecutor said was the statement of New York state law. But this isn't governed by New York state law. I understand that. I'm just saying it's quite plausible that a state prosecutor would tell her what New York state law is. And implausible that she would make this up without asking anybody. No one's saying that she, I'm not accusing her of making it up, Your Honor. I want to be clear. So let's deal with the possibility. You go to the prosecutor. You say I want my money. And they say, well, you can't get that. You can't even apply for it until there's a verdict in the case. Why isn't that not excusable neglect? It's not even neglected to her. Because she already sought the money. There's no doubt that she wanted the money back. And then she's told that she can't get it. She gets a notice saying you have to respond within a period of days. That would suggest to her that having already sought it and being told that there's a later time when she can seek it, that she as a pro se should assume that she has to seek it three times. Well, Your Honor, what I would say is this. The advice that she claims that she was given by the state prosecutors, they didn't tell her, look, you don't have to file anything. She alleges that. And it's perfectly plausible. No, she didn't. She alleged what she was told, that it's not available until it's over. She didn't say they told her you don't have to file anything. You're saying they told her you're not going to get it until the case is done. It's a temporal question. Yes. They're not saying you don't have to file the claim. They didn't give her substantive advice. The idea is whether she's being neglectful when she understands that advice to mean she can't file a claim until the case is over. Right? Well, that and that's the – I understand. Technically, they're not saying you don't need to file a claim. They didn't give her – So they gave her advice that's accurate if you parse it correctly. She understood it in a different way. So the question is, you know, is that a reasonable way to understand the advice? Exactly. And under Pioneer, it's not. A subject of misapprehension is not a basis for excusable neglect. That's one of the clear holdings of Pioneer. Pioneer says that the test for excusable neglect is broad and it's flexible, but it does set some outer limit guideposts. And one of those – much like Starling's claim – Well, generally, right? So, I mean, let's say the district attorney did in fact say you can't file a claim until the case is over. Let's say she got that advice directly. So it's not the way you describe it. Would that be excusable neglect? I think a district court would be on better footing in finding it, yes, because that's arguably misleading her. That's giving bad advice. That's not – A yes would be on better footing. You didn't say yes. Because it's a discretionary call for the district court. There are still other factors to weigh. I think if that factor were that she was affirmatively misled, then I think a district court could very well find excusable neglect. But I'm not prepared to say it outweighs the other factors. So in this case, maybe you don't think it's an abuse of discretion to go the other way. But if a district court had said, well, it wasn't technically incorrect, but the way it was presented to her was misleading because a reasonable person might think they couldn't file a claim in time. And so I think she was misled, and then I'm going to find it's excusable neglect. You wouldn't say that's abuse of discretion? No, I don't think we'd be here. I don't think we would have appealed that. So the district court could have said it was excusable to neglect here. I think it could have, but I don't – but that, I think, just highlights that – You just think it wasn't required to. Required to what? To say that it was excusable neglect. It has discretion, and I think it was required to say, look, I don't view this advice as substantive advice. I view this as a temporal question of when to file. I don't view – there's no allegation that she was misled in any way, shape, or form. And so given that, I think the district court was within the bounds to say she may have misunderstood. And that's understandable because she's pro se, but I don't have to forgive that. Would you have argued that it was not excusable neglect? Yes. You would have argued that it was not. I'm sorry. If she was misled, what would I have argued? Yes. I can't – possibly not. No, I can't say what I would have done hypothetically. If she had been affirmatively misled, I think there's a very reasonable likelihood that we would not have contested this. We would not have disputed – if somebody was affirmatively misled with respect to their legal obligations by a judicial officer, I don't think the government would have pressed the point. I wasn't – You're free not to press the point right now. You could give her $8,000. Because I don't think that's what the – because that's not what the advice was. She wasn't misled in our reading of it and the district court's reading of it. Under state law, would she have been able to make the claim for the money before the verdict in the underlying criminal case? I don't know the answer to that, Your Honor. Well, she wouldn't either, would she? I'm sorry? She wouldn't either. I don't know. Probably not. I don't know the answer because this wasn't litigated under New York state law, so I'm not familiar with that. I can tell you about the federal procedures, but I don't know what the state law practice was. I have to tell you, this sounds disreputable to me, but go ahead. So you think she wasn't misled, but do you think that she – you don't think she intentionally relinquished her claim to the money? No, we're not suggesting that. So, in fact, she was misled. It's just that you don't think that the advice was misleading. She just took it the wrong way. Well, I think that's a qualitative difference. I think there's a big difference between saying the advice was objectively accurate and she may have misunderstood it, just like part of her claim below. So you're just saying you wouldn't have pursued the claim if the district attorney had told her the wrong advice, but if the district attorney had told her accurate advice but she didn't understand it precisely, you would still pursue the claim? That's the – the second half is the situation here. I think if the record – But I just – just in terms of the government's choices about when to pursue the claim, why does that make a difference in terms of the underlying equities? Well, because I think the underlying equities – I mean, equities about fairness in the given case, but there's also equities in applying the law even-handedly, and we have to look at what the advice was given. If she had made a different allegation, the case may have proceeded differently, but the allegation was they just said I can't get the funds until the case is over. That's not saying they didn't – she didn't say they told me don't file anything or don't do anything or withhold your rights. I think there's a difference, and we're just trying to take what's written in the pleadings at face value. And what the district court did here is the government, within its reasonable discretion, the government said, look, her claim is untimely, she doesn't have standing, she may have misunderstood the rules. She may have believed, for example, that the filing of the administrative claim would be sufficient, and she didn't have to file a judicial claim, but that's a misunderstanding of law. And the court – this court has repeatedly said that a misunderstanding of law is not excusable neglect. And when you're dealing with a matter that's entrusted to the court's discretion, as this is, the court is very reluctant to second-guess the district court's determinations. And so I understand – To go back to what I was saying at the beginning, it certainly sounds as though the outcome here is heavily affected by the fact that the Rochester authorities gave the money to the federal government to hold, and that it is the machinations of federal law which, according to you, deprive her of the ability to seek her money at this time. Well, again, you're – You're saying you don't know whether that's state law. I don't think it is state law, but it appears that the transfer of the money to the federal government has raised the bar and has raised what you consider to be insurmountable procedural bars to her recovering of the money. I don't know the answer. It could well be that New York state law is even more onerous. I honestly don't know if it raised the bar, lowered the bar, kept the bar in the same place. I honestly can't say, Your Honor. I'm sorry. But what you're arguing, bars her from getting her money, is a wrinkle of federal law, an important one. But it's a wrinkle of federal law which only matters because the state authorities gave the money in keeping to the federal government because it seems to be beyond the ability of the state authorities to administer forfeiture that this pro se is supposed to understand. Again, I just – I want to be clear for the record. It is – there could be multiple reasons. There's nothing in the record that says why the states did this. I don't want to make it as though it's a definitive established fact that they gave it to them because they don't have resources or whatever. There are multiple reasons why we have these adoptive forfeitures. I understand the court's reaction and the negative connotation that is going along with that. I respect that and I understand it. But it is a common – it is a practice defined by regulation. Okay? It is something that does happen. And I just want to be clear. There's nothing in the record that says why it was done. And there's certainly been no suggestion that it was done as sort of a bad faith effort to raise the bar and make life more difficult. Again, we have – I have sympathy and I understand. Would you confirm that the government was not required to fight this on a last-ditch basis? Yes. Certainly. In fact, wasn't it the case she filed the administrative claim and then after filing the administrative claim and terminating the administrative proceedings, the government filed the claim in court? That's the way it works. So what happens is administrative proceedings are – administrative forfeiture proceedings are streamlined. There is no dis-given. So what goes into that decision as to whether once she terminates the administrative proceeding because she's filed something in the administrative proceeding, the government decides to then pursue judicial proceedings against the assets? That's the way it works. Administrative proceedings are – So it's automatic? The administrative proceedings are filed. If any individual files a claim in the administrative proceedings, they're automatically terminated. And then in order for the government to seek forfeiture, it has to initiate a judicial – Right, but I'm just saying at that point the government wouldn't have to seek forfeiture. They could have said, okay, she's filed the claim at that point. But you were seeking it at that point because you thought that it was still being used as drug? And we still do, yes. I mean the acquittal doesn't legally preclude that finding, but yes, we still do. And the point is that in an administrative forfeiture proceeding, filing a claim terminates the proceeding, but it doesn't vest any rights. In a judicial proceeding, the notice bestows rights if it's timely filed, and that's why she lacked standing because unfortunately she missed the deadline. And $500 of this was found in a pair of women's jeans in her home, correct? Right. But the government hasn't returned that even though you just said you could. Yes, that's right, because the government's investigation suspected that even though it was in the pair of women's jeans pockets, that it was still part of his drug dealing. She doesn't – you suspect that she doesn't have any money? No, we're not saying that. We're not saying that at all, but we're saying that the home that was searched found drugs and drug paraphernalia and two bundles of money, the $7,500 and the $500 in the women's jeans. Okay? The $500 being in her jeans suggests it may have been hers. Maybe he hid it there. There's lots of explanations for it. That's all I'm saying. And so, no, we haven't returned it because at that time the criminal case against her boyfriend was still – her then-boyfriend was still going on.  Thank you very much, Mr. Rocker. Thank you, Your Honor. We'll hear back from Mr. Johnson on rebuttal. Thank you, Your Honors. If you could address this question about sequencing. Yeah. Are you required to do the claim first? No, Your Honor. I don't think that you are. And the reason – I think this would come up in any case where you have a default. Obviously, forfeiture raises slightly different questions. You have to file both a claim and an answer. But, obviously, in any case where there's a default, there's both – you could separate it out and say, you know, should they be allowed to lift the default? And then should they be able to get an extension of the time to file an answer? In these cases, we're talking about statutory standing, right? That's before the Supreme Court decides let's mark. It's about the court clarifying. It's not really standing. It's not really a threshold question, right? It's about whether you have a cause of action. So after the court decides let's mark, maybe we don't have to do that kind of sequencing. Maybe we suggested it in some earlier case. I don't know. That's right. Is there anything that would stop a court from entertaining a motion to vacate the default before it decides the timeliness of the claim? I don't think there's anything that would prevent that, Your Honor. And, actually, I think this was the question that was before the Sixth Circuit in the United States versus 22,050. And in that case, the Sixth Circuit framed this question as in this circumstance where somebody comes to us late, is trying to file a claim, is the question whether to extend the time to file a claim or is the question whether to lift the default under Rule 55? And they said in that circumstance, it's not two separate inquiries. It's just one inquiry, and the inquiry is under Rule 55. So I think that's, you know, it's not clear to me from the government's brief whether they think that case is correctly decided, wrongly decided, but I certainly think the analysis in that case is persuasive, and it's correct, and it's really on point with this case. You know, the other thing I just wanted to very quickly say, Your Honor, is that I don't think there's any need to remand in this case. And the case that I would point the court to on that is Enron Oil Corporation versus Daya Kahura, and that's a Second Circuit case. In that case, the district court was unclear what standard the district court had applied. They hadn't applied the good cause standard. This court said first you have to apply the good cause standard. But then it also said— So there's no need to remand to apply the good cause standard, but it has to be remanded for the actual proceedings to recover the money, right? No, of course, of course. You're saying that it doesn't need to be left to the district court to decide good cause. Exactly, yes. Well, the government says it hasn't argued about whether she needs the good cause standard or not, and so shouldn't they have the opportunity to contest that question? Well, I think it was decided below that she hadn't met whatever standard should apply to lift the default. You know, whether the factors are essentially the same, they are the same, in fact, under both tests. That's, again, this Enron Oil Corporation case where this court says it's the same three factors for good cause under Rule 55 and excusable neglect under Rule 60. It's the same tests, the same factors. It's just easier to meet it in the Rule 55 context. So they've already briefed under the excusable neglect standard. There's no need to remand, have a whole other round of briefing on this, when, again, there are three factors, and all three factors, I think concededly, weigh in favor of lifting the default. Okay. Thank you very much, Mr. Johnson. The case is submitted.